**UNITED STATES COURT OF INTERNATIONAL TRADE**
**NEW YORK, NEW YORK**

| | |
|---|---|
| **LINK-BELT CRANES, L.P., LLLP; and SUMITOMO HEAVY INDUSTRIES CONSTRUCTION CRANES CO., LTD.**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant.** | **Ct. No. 26-03659**<br><br>**Before: Unassigned.** |

# COMPLAINT

Plaintiffs, Link-Belt Cranes, L.P., LLLP ("Link-Belt") and Sumitomo Heavy Industries Construction Cranes Co., Ltd. ("HSC") (collectively, "Sumitomo" or "Plaintiffs"), by and through counsel, bring this Complaint against the United States of America, and allege as follows:

This case is exceptional because the record shows that Sumitomo was not dumping. Indeed, at the preliminary results stage, the U.S. Department of Commerce ("Commerce" or the "Department") calculated a **zero percent dumping margin** for Sumitomo. Commerce only achieved a non-zero dumping margin for Sumitomo in its final determination by seizing upon the existence of a small number of rental transactions that Plaintiff Link-Belt disclosed in its initial questionnaire response and sales reconciliation, and that Commerce reviewed at verification without incident. Without seeking any further information or clarification —let alone a required deficiency questionnaire—Commerce nonetheless used this as a basis to apply adverse inferences to substantially all of Link-Belt's extensively reported and verified sales. Plaintiffs bring this action to challenge this unjustified and overbroad use of adverse facts available ("AFA") authority to manufacture an unlawful dumping rate that does not otherwise exist.

**ADMINISTRATIVE DETERMINATION TO BE REVIEWED**

1. Plaintiffs contest Commerce's final determination that lattice boom crawler cranes ("LBCC") from Japan are being, or are likely to be, sold by Sumitomo in the United States at less-than-fair-value. *Lattice Boom Crawler Cranes From Japan: Final Affirmative Determination of Sales at Less Than Fair Value*, 91 Fed. Reg. 33,690 (Dep't Commerce June 4, 2026) ("Final Determination"), and accompanying Memorandum from Scot Fullerton to Christopher Abbott, *Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Lattice Boom Crawler Cranes from Japan*, Case No. A-588-883 (Investigation) (June 1, 2026), ACCESS 4925323-02 ("Final IDM").

**JURISDICTION**

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). That section confers jurisdiction on the U.S. Court of International Trade to review, *inter alia*, final determinations issued by Commerce under Section 516A(a)(2)(A)(i) and (B)(i) of the Tariff Act of 1930 (the "Act"), as amended, 19 U.S.C. §§ 1516a(a)(2)(A)(i), (B)(i).

**NAME AND STANDING OF PLAINTIFFS**

3. Link-Belt is a manufacturer in the United States of finished LBCCs. HSC is a foreign exporter of LBCCs and LBCC assemblies from Japan. Link-Belt and HSC participated in the antidumping ("AD") duty investigation that led to the challenged Final Determination through the submission of argument and factual information. Plaintiffs are therefore interested parties and parties to the proceeding within the meaning of Section 771(9)(A) of the Act, 19 U.S.C. §§ 1677(9)(A) and (C), and have standing to bring this action under 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4. Section 516A(a)(2)(A)(i)(II) of the Act requires that, in actions challenging Commerce's determinations described in Section 516A(a)(2)(B)(i), the summons must be filed within 30 days of the date of publication in the *Federal Register* of the resulting AD order, and the complaint must be filed within 30 days thereafter. 19 U.S.C. § 1516a(a)(2)(A)(i)(II). Commerce announced the Final Determination on June 1, 2026, and then published the Final Determination in the *Federal Register* on June 4, 2026. *See* Final Determination, 91 Fed. Reg. 33,690. The AD order was published in the Federal Register on July 23, 2026. *Lattice Boom Crawler Cranes From Japan: Antidumping Duty Order*, 91 Fed. Reg. 46,396 (Dep't Commerce July 23, 2026). On August 17, 2026, within 30 days from Commerce's July 23, 2026, publication of the AD order, Plaintiffs filed a summons with this Court. On September 15, 2026, within 30 days of the filing of the summons, Plaintiffs filed this Complaint. This action is therefore timely.

## STANDARD OF REVIEW

5. This Court reviews final determinations issued by Commerce under 19 U.S.C. § 1673d to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## STATEMENT OF FACTS

6. Link-Belt and HSC are both manufacturers of construction equipment, including crawler cranes. Link-Belt is headquartered in and has its manufacturing facility in Lexington, Kentucky, United States. HSC is headquartered in Tokyo, Japan and has its main manufacturing facility located in Aichi, Japan. Both HSC and Link-Belt are wholly owned by Sumitomo Heavy Industries, Ltd., which is headquartered in Tokyo, Japan. HSC does not export finished LBCCs to the U.S. market. Instead, HSC only exports certain LBCC assemblies to the U.S., with only one

customer in the U.S., *i.e.*, Link-Belt. Link-Belt in turn utilizes assemblies that HSC exports, as well as assemblies it manufactures itself in Lexington, to produce complete LBCCs.

7. On April 30, 2025, Commerce initiated an AD investigation of LBCCs from Japan. *Lattice Boom Crawler Cranes From Japan: Initiation of Less-Than-Fair-Value Investigation*, 90 Fed. Reg. 19,270 (Dep't Commerce May 7, 2025). Following initiation, Commerce issued quantity and value ("Q&V") questionnaires to the two exporters of the merchandise under consideration, Kobelco Construction Machinery Co., Ltd. ("Kobelco") and HSC. *See* Memorandum from Scot Fullerton to Christopher Abbott, *Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Lattice Boom Crawler Cranes from Japan*, Case No. A-588-883 (Investigation) at 1-2 (Jan. 13, 2026), ACCESS 4865592-02 ("Prelim. IDM"). Both HSC and Kobelco responded to the Q&V questionnaires, and no other companies responded. Accordingly, on May 22, 2025, Commerce issued the Initial Questionnaire (the "IQR") to Kobelco and HSC as mandatory respondents. *Id*.

8. The Plaintiffs timely responded to Section A of the IQR on June 23, 2025 and Sections B, C, D, and E on July 10, 2025. Thereafter, Commerce issued (i) the First Supplemental Questionnaire on July 23, 2025; (ii) the Second Supplemental Questionnaire on August 13, 2025; (iii) the First Supplemental Sections D Questionnaire on September 5, 2025; (iv) the Third Supplemental Questionnaire on September 8, 2025; (v) the Section E Supplemental Questionnaire on September 15, 2025; (vi) the Fourth Sales Supplemental Questionnaire on November 17, 2025; (vii) the Second Section D Supplemental Questionnaire on December 11, 2025, and (viii) questions through "Telephone Conversation with Counsel for Sumitomo Heavy Industries Construction Cranes Co., Ltd." on January 6, 2026. Prelim. IDM at 2-3. The Plaintiffs responded timely to each of these questionnaires, including the one issued through "Telephone Conversation with

Counsel for Sumitomo Heavy Industries Construction Cranes Co., Ltd.," for which only one day was given to provide a response. *Id*.; *see also* Letter from Hogan Lovells US LLP to the U.S. Department of Commerce, *Antidumping Duty Investigation of Lattice-Boom Crawler Cranes from Japan: Response to Questions Related to Telephone Conversation with Counsel for Sumitomo Heavy Industries Construction Cranes Co., Ltd. (Issued on January 6, 2026)*, Case No. A-588-883 (Investigation) (Jan. 7, 2026), ACCESS 4863105.

9. Of particular relevance to the claims raised here, Plaintiffs' response to Section A of the IQR references in multiple places that Link-Belt's affiliated distributors occasionally rent cranes to customers. Commerce never issued any follow-up questions with respect to Link-Belt's disclosure of such rentals. *See* Letter from Barnes & Thornburg LLP to the U.S. Department of Commerce, *Antidumping Duty Investigation of Lattice-Boom Crawler Cranes (LBCCs) from Japan: Rebuttal Brief on HSC/Link-Belt Specific Issues*, Case No. A-588-883 (Investigation) at 6-9 (May 18, 2026), ACCESS 4921627-01 ("Link-Belt Rebuttal Brief"); Letter from Hogan Lovells US LLP to the U.S. Department of Commerce, *Antidumping Duty Investigation of Lattice-Boom Crawler Cranes from Japan: Response to Section A of the Initial Questionnaire*, Case No. A-588-883 (Investigation) at Exhibits LB-7(a) (pages 144-147) and LB-7(b) (pages 12, 13, and 15) (June 23, 2025) (BPI version) (providing account listings and financial statement notes referencing rental transactions).

10. Likewise, in providing its standard sales reconciliation to Commerce, which is the mechanism by which Commerce determines if a respondent has fully reported its sales, Link-Belt highlighted, on both the **first page** of the reconciliation worksheet and its General Ledger worksheet, that its "LBCC Sales to Mid-Atlantic and Triad **not retailed**" were "excluded from the sales database" and that this was one of the few figures to be deducted from Link-Belt's net sales

to reconcile with the total value of sales reported in its U.S. sales database. *See* Letter from Hogan Lovells US LLP to the U.S. Department of Commerce, *Antidumping Duty Investigation of Lattice-Boom Crawler Cranes from Japan: Response to Sections B-E of the Initial Questionnaire*, Case No. A-588-883 (Investigation) at Exhibit LB-C-2 (PDF pages 58, 71) (July 10, 2025), ACCESS 4791045-03 (emphasis added).

11. As in the case with the response to Section A of the IQR, prior to Link-Belt's sales verification, the Department never asked any questions about this "LBCC Sales to Mid-Atlantic and Triad not retailed – excluded from the sales database" reconciliation item, even though it posed numerous questions on Link-Belt's sales reconciliation submission. *See* Letter from Barnes & Thornburg LLP to the U.S. Department of Commerce, *Antidumping Duty Investigation of Lattice-Boom Crawler Cranes (LBCCs) from Japan: Response to the Third Supplemental Questionnaire*, Case No. A-588-883 (Investigation) (Sept. 29, 2025), ACCESS 4833048-01 (responding to Commerce's supplemental questions on the sales reconciliation).

12. Commerce published its Preliminary Determination on January 16, 2026. *Lattice Boom Crawler Cranes From Japan: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 91 Fed. Reg. 2,098 (Dep't Commerce Jan. 16, 2026) ("Preliminary Determination"). Commerce preliminarily—and correctly—determined that **HSC was not dumping**, determining a weighted-average dumping margin of **zero percent for HSC (as Sumitomo's exporter)**, while assigning a cash deposit rate of 2.79 percent to Kobelco and all other exporters and producers. *Id.* at 2,099.

13. Commerce's preliminary analysis memorandum for HSC/Sumitomo thus states that its total amount of dumping is $0.00, and that its weighted-average margin is 0.00 percent. *See* Memorandum from Dmitry Vladimirov to The File, *Less-Than-Fair-Value Investigation of Lattice*

*Boom Crawler Cranes from Japan: Preliminary Analysis Memorandum for Sumitomo Heavy Industries Construction Cranes Co., Ltd.*, Case No. A-588-883 (Investigation) at 1 (Jan. 13, 2026), ACCESS 4865693-01.

14. Moreover, Commerce in its Preliminary Determination did not raise any issue or concern about the rental transactions that Link-Belt had disclosed in the Section A questionnaire response and reconciliation. *See generally* Preliminary Determination, 91 Fed. Reg. 2,098.

15. Following the Preliminary Determination, Commerce conducted full verification (including sales) with respect to Link-Belt's and HSC's submissions. Final IDM at 2. Commerce's verification report briefly noted the existence of rentals and again did not raise any issue or concern about them. *See* Memorandum from Dmitry Vladimirov and Bryan Hansen to The File, *Antidumping Duty Investigation of Lettice Boom Crawler Cranes from Japan: CEP Sales Verification of Link-Belt Cranes, L.P., LLLP*, Case No. A-588-883 (Investigation) at 10 (Apr. 9, 2026), ACCESS 4909789-01 ("CEP Sales Verification Report") (referencing the rental fleet of Link-Belt's affiliated distributor); *id.* at 8-9 (referencing sales to affiliated distributors that were "not retailed" and Commerce's verification of the transactions).

16. Thereafter, The Manitowoc Company, Inc. ("Manitowoc" or "Petitioner") submitted its Case Brief concerning company-specific issues regarding HSC and Link-Belt. Petitioner's brief inaccurately asserted that Commerce first learned about crane rentals by Link-Belt's affiliated distributors during verification. Petitioner urged Commerce to apply total AFA to Link-Belt or, at a minimum, apply partial AFA. *See* Letter from Cassidy Levy Kent (USA) LLP to the U.S. Department of Commerce, *Lattice-Boom Crawler Cranes, Whether Or Not Assembled, from Japan: Case Brief Concerning Company-Specific Issues Regarding HSC*, Case No. A-588-883 (Investigation) at 13-16 (May 11, 2026), ACCESS 4920321-01. In its rebuttal brief, Link-

Belt (i) clarified that Link-Belt disclosed the fact that its affiliated distributors rent cranes occasionally in the Plaintiffs' response to Section A of the IQR; (ii) explained that information on record indicates that such rentals by Link-Belt's distributors are not equivalent of sales and are not reportable; and (iii) demonstrated that application of AFA was not warranted. *See* Link-Belt Rebuttal Brief at 6-9.

17. Commerce published the Final Determination on June 4, 2026. 91 Fed. Reg. 33,690. Reversing its preliminary finding that HSC was not dumping, Commerce now assigned HSC a weighted-average dumping margin of 20.00 percent based on its application of AFA to substantially all of Link-Belt's sales. *Id.* at 33,691.

18. Despite not requesting further information about rentals through its questionnaires, Commerce determined to apply partial AFA based on its finding that it did not have enough information to determine whether the small number of such rentals should be treated as sales and that Link-Belt/Sumitomo therefore failed to cooperate by not acting to the best of its ability in responding to Commerce's requests for information. Final IDM at 30-36. In addressing the arguments that Link-Belt presented in its rebuttal brief, Commerce merely stated in a footnote that "although the record reflects mentions of 'fleet rental revenue,' 'not retailed,' 'rental companies,' 'rental revenue,' 'rental fleet' and the fact that Link-Belt's affiliated distributors rent cranes, Sumitomo did not elaborate in its responses Link-Belt's practice of renting cranes in the normal course of business." *Id.* at 35.

19. Additionally, although Commerce purported to apply "partial" AFA, it substituted adverse information for essentially all of Link-Belt's reported sales. The Department rejected the entirety of the U.S. sales database (except a few sales that were subject to sales tracing at verification) due to the alleged failure to provide sufficient information with respect to a small

number of rental transactions. Put another way, it rejected all of Link-Belt's sales, even if they were reported, due to an alleged failure to report more information about a small number of rental transactions. As "partial" AFA, Commerce applied the price of the cheapest out of the sales subject to sales tracing at verification to **substantially all other U.S. sales**. *Id.* at 36.

20. Comparing the margin rates from the preliminary determination and from the final determination demonstrates that this unjustified and extensive use of AFA—notwithstanding Link-Belt's thorough reporting of its sales—is the only way that Commerce ultimately was able to achieve a non-zero rate for Sumitomo. Consequently, Commerce's strained and sweeping AFA determination is the only way that it was able to bring Sumitomo within the resulting AD order.

## STATEMENT OF CLAIMS

## COUNT ONE

### Commerce's Application of AFA Is Not Supported by Substantial Evidence and Otherwise in Accordance with Law Because There is No Gap in the Record Regarding the Rental Transactions

21. Plaintiffs hereby incorporate by reference paragraphs 1 through 20 of this Complaint.

22. The Department must meet all of the statutory criteria to use AFA with respect to any information submitted by a respondent.

23. First, pursuant to 19 U.S.C. § 1677e(a), the Department must determine that necessary information is not available on the record, was not provided in a timely or verifiable manner or in the form and manner requested, or that the respondent has otherwise significantly impeded the proceeding.

24. Second, pursuant to 19 U.S.C. § 1677m(d), if the Department "determines that a response to a request for information . . . does not comply with the request," it must "promptly

inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency{.}"

25. Third, pursuant to 19 U.S.C. § 1677m(e), the Department must find that the respondent in responding to the deficiency questionnaire, among other things, failed to provide information that is timely, verifiable, sufficiently complete, and can be used without undue difficulties.

26. Fourth, pursuant to 19 U.S.C. § 1677e(b), the Department must find "that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information{.}"

27. Commerce's determination to use the facts otherwise available instead of relying on Link-Belt's reported U.S. sales data was unsupported by substantial evidence and contrary to law. Plaintiffs responded fully to all of Commerce's questionnaires and disclosed the existence of rentals by Link-Belt's distributors in its response to Section A of the IQR and in its sales reconciliation. Commerce did not seek any further information on such rentals.

28. Moreover, as Link-Belt explained in its response to the Petitioner's allegations, the rentals by Link-Belt's affiliated distributors at issue were not sales, and thus not reportable.

29. Therefore, Link-Belt did not fail to provide any information that Commerce requested, and there was not a basis for Commerce to resort to the facts otherwise available. *See, e.g.*, *Zhejiang DunAn Hetian Metal Co. Ltd. v. United States*, 652 F.3d 1333, 1345-49 (Fed. Cir. 2011) (holding that "Commerce can only use facts otherwise available to fill a gap in the record" and that it was "improper" for Commerce to apply AFA when there was no gap).

**COUNT TWO**

**Commerce's Application of AFA Is Not Supported by Substantial Evidence and Otherwise in Accordance with Law Because Commerce Failed to Issue a Deficiency Questionnaire with Respect to the Rental Transactions**

30. Plaintiffs hereby incorporate by reference paragraphs 1 through 29 of this Complaint.

31. Commerce's authority to apply the facts otherwise available in reaching its determination under 19 U.S.C. § 1677e(a) is "subject to section 1677m(d) of this title{.}"

32. As stated above, 19 U.S.C. § 1677m(d) requires that, if the Department "determines that a response to a request for information . . . does not comply with the request," it must "promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency{.}"

33. Commerce did not provide any such opportunity in this case, in particular by failing to issue a deficiency questionnaire informing Link-Belt that it considered Link-Belt's reporting regarding the rentals deficient. Nor, given that it did not issue a deficiency questionnaire, did it find pursuant to 19 U.S.C. § 1677m(e) that Link-Belt in responding to a deficiency questionnaire failed to provide sufficiently reliable information.

34. As a consequence, Commerce did not have grounds under 19 U.S.C. § 1677m(d) and (e) to rely on the facts otherwise available in filling the alleged gap in the record. In contravention of its obligations under 19 U.S.C. § 1677m(d), Commerce failed to identify to Plaintiffs any missing information or otherwise incomplete response relating to the rentals by Link-Belt and failed to provide Plaintiffs the opportunity to remedy or explain any such deficiency.

35. Commerce's application of the facts available to Link-Belt's U.S. sales data is therefore unsupported by substantial evidence and not in accordance with law. *See, e.g.*, *Hitachi*

*Energy USA Inc. v. United States*, 34 F.4th 1375, 1385 (Fed. Cir. 2022) (holding that "the authorization to rely on adverse facts available is subject to § 1677m(d), which requires Commerce to provide notice and an opportunity to remedy a deficiency" and that "Commerce has no authority to apply adverse facts and inferences unless the respondent has failed to provide requested information when notified of the deficiency, and has not acted to the best of its ability in responding to such requests").

**COUNT THREE**

**Commerce's Application of AFA Is Not Supported by Substantial Evidence and Otherwise in Accordance with Law Because the Plaintiffs Have Cooperated to the Best of Their Abilities in Responding to Commerce's Requests for Information**

36. Plaintiffs hereby incorporate by reference paragraphs 1 through 35 of this Complaint.

37. Commerce did not have grounds under 19 U.S.C. § 1677e(b) to draw an adverse inference in replacing the allegedly missing information. Commerce is required to find that a party has failed to cooperate by not acting "to the best of its ability" in responding to Commerce's requests for information prior to determining the use of an adverse inference is warranted.

38. Here, Link-Belt and HSC cooperated to the best of their ability in the proceeding. Link-Belt and HSC responded to all of the numerous questionnaires and requests for information from Commerce. The record demonstrates that neither Link-Belt nor HSC failed to cooperate at any point during the investigation. Further, as noted above, Commerce never asked follow-up questions related to the rental transactions after receiving the Plaintiffs' IQR Section A response and reconciliation.

39. Commerce's application of AFA is therefore both unsupported by substantial evidence and otherwise not in accordance with law. *See*, *e.g.*, *Venus Wire Indus. Pvt. Ltd. v. United States*, 471 F. Supp. 3d 1289, 1311-12 (Ct. Int'l Trade 2020) (holding that "{t}o avoid the

threat of {section} 1677e(b), a submitter need only provide complete answers to the questions presented in an information request" and that "Commerce cannot fault {a respondent} for failing to answer a question before it was requested to do so") (citations omitted).

## COUNT FOUR

### Commerce's Application of AFA Is Not Supported by Substantial Evidence and Otherwise in Accordance with Law Because Commerce Improperly Applied AFA to Substantially All of Link-Belt's Sales Transactions

40. Plaintiffs hereby incorporate by reference paragraphs 1 through 39 of this Complaint.

41. Commerce's "partial" AFA determination to **replace substantially all of Link-Belt's fully-reported U.S. sales transactions** with the lowest net U.S. price among the sales subject to sales tracing at verification is unjustified and unlawful. Indeed, as established above, these non-rental sales were subjected to verification without a material issue, as memorialized in the CEP Sales Verification Report.

42. When applying AFA, it is only appropriate for Commerce to use facts otherwise available to fill the gap of missing information in the proceeding and it cannot ignore otherwise usable information on the record. *See e.g.*, *Zhejiang DunAn Hetian Metal*, 652 F.3d at 1348 (holding that Commerce "may not {use AFA} in disregard of information of record that is not missing or otherwise deficient" and that "under the plain language of § 1677e(a), it is clear that Commerce can only use facts otherwise available to fill a gap in the record") (citation omitted); *Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349, 1364 (Ct. Int'l Trade 2018) (holding that 19 U.S.C. § 1677e does not allow Commerce to "replace{} known, unchallenged record information . . . with adverse facts available" and characterizing the scenario as having "no informational gap . . . for Commerce to fill").

43. Moreover, as established above, 19 U.S.C. § 1677m(e) establishes that Commerce "shall not decline to consider information that is submitted by an interested party and is necessary to the determination" when the information meets that statutory provision's requirements.

44. Here, in contravention of these requirements, Commerce has replaced substantially all of Link-Belt's reported sales information. Commerce's replacement of substantially all of Link-Belt's reported sales transactions is overly broad, punitive, and bears no relationship to the verified facts on the record regarding Sumitomo's lack of dumping behavior.

45. Commerce's overly broad application of AFA is therefore unsupported by substantial evidence and contrary to law.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that this Court:

(a) hold that the Final Determination is unsupported by substantial evidence and otherwise not in accordance with law;

(b) remand the Final Determination with instructions to issue a new determination that is consistent with the Court's decision; and

(c) provide such other and further relief as this Court deems just and proper.

Respectfully submitted,

**BARNES THORNBURG LLP**

/s/ David M. Spooner
David M. Spooner

*Counsel to Link-Belt Cranes, L.P., LLLP*

**HOGAN LOVELLS CADWALADER US LLP**

/s/ Joshua E. Kurland
Joshua E. Kurland
Jared R. Wessel
Emma T. Hunter
Hao-Kai Pai

*Counsel to Sumitomo Heavy Industries Construction Cranes Co., Ltd.*

Date: September 15, 2026